# SUPREME COURT.

THE PEOPLE *ex rel.* RICHARDSON H. THURMAN agt. JAMES RYAN, JR., EDWARD McGLYNN and TIMOTHY RYAN, general assessors of Troy, and JOHN P. ALBERTSON, comptroller of Troy.

*Taxation — Party can only be assessed for his "taxable personal property," deducting from its value the just debts owing by him — What are just debts.*

The relator was the owner of 221 shares of the capital stock of the First National Bank of Troy, which the assessors, in the imposition of a tax upon him, have valued at sixty-five dollars and fifty-three cents per share. On the 1st day of September, 1880, the relator appeared before the assessors and was sworn and examined orally as to his property. The evidence disclosed debts owing by the relator greater than the value of his personal property, including as a part of such personal property his shares of stock in the bank. Twenty-five thousand dollars of the debt owing by him was for money borrowed of the First National Bank of New York, for which amount such bank held his note, payable on demand. The note had been discounted in May or June, 1880, and with its proceeds such bank had purchased for the relator United States bonds, which it held as collateral security for the payment of the note. The assessors refused to deduct the amount of such note from

the taxable property.  On *certiorari*, under chapter 269 of the Laws of 1880, to review the assessment:

*Held*, that the assessors were not justified in their refusal to deduct the debt owing by the relator in New York from the value of his bank shares.

The obligation held by the New York bank against the relator was a just debt, as it was for money loaned to him, for which he had given his promissory note, payable on demand.  That such money had been used to purchase United States bonds, which were pledged to the bank as security for the payment of the note, did not make it less than a just debt, which must, by the Revised Statutes, be deducted from the value of the relator's "taxable personal property," and by the act of 1880 (*chapter* 596), from the value of his bank shares, and for the balance only of such value was the relator taxable.

*Albany Special Term, July,* 1881.

CERTIORARI under chapter 269 of the Laws of 1880 to review an assessment.

*Samuel Foster*, for relator.

*R. A. Parmenter*, for respondent.

WESTBROOK, *J.* — The return to the writ of *certiorari* discloses the following facts :  The relator, Richardson H. Thurman, is a resident of the city of Troy, and is cashier of a banking institution there located, and named " The First National Bank of Troy."  The capital stock of such bank is $300,000, divided into 3,000 shares of $100 each, and it has also a surplus of undivided profits over and above its capital stock.  The relator is the owner of 221 shares of the capital stock of such bank, which the assessors, in the imposition of a tax upon him, have valued at sixty-five dollars and fifty-three cents per share, over and above the value of the real estate owned by the bank.

By affidavit duly made and served upon the assessors, the relator claimed that he was not taxable for any personal property whatever, because after deducting all just debts, and all

personal property exempt from taxation, the value of his personal property did not exceed one dollar.

On the 1st day of September, 1880, the said Thurman appeared before the assessors and was there sworn and examined orally as to his property. Without repeating the details of the evidence, it is sufficient to say that it disclosed debts owing by the relator greater than the value of his taxable personal property, including as a part of such personal property his shares of stock in the bank. Twenty-five thousand dollars of the debt owing by him was for money borrowed of the First National Bank of New York, for which amount such bank held his note payable on demand. The note had been discounted in May or June, 1880, and with its proceeds such bank had purchased for the relator United States bonds, which it held as collateral security for the payment of the note. The assessors refused to deduct the amount of such note from the taxable property upon the ground, apparently, that the money owing to the New York bank could not be treated as a debt, because it was used to purchase Government bonds to escape taxation.

It should be added that the evidence given by the relator was entirely uncontradicted, and he denied that he had purchased such bonds, and contracted such debt for the purpose of escaping taxation. All these facts appear by the return, and consequently (*chap.* 269 *of Laws of* 1880, *sec.* 4) there is no necessity of taking evidence as the act, under which this proceeding is brought, permits.

The question, laying aside all side issues, is, were the assessors justified in their refusal to deduct the debt owing by the relator in New York from the value of his bank shares?

The Revised Statutes of this state (*vol.* 1 *of* 6*th ed.*, *p.* 936, *subd.* 4 *of sec.* 9) direct, that in taxing an individual for personal property there shall be placed in the assessment roll, " in the fourth column, the full value of all the taxable personal property owned by such person, after deducting the just debts owing by him."

The People *ex rel.* Thurman agt. Ryan.

The act of 1880 (*chap.* 596, *sec.* 3) provides that in taxing bank shares, "each stockholder shall be allowed all the deductions and exemptions allowed by law in assessing the value of other taxable property, owned by individual citizens of this state, and the assessment or taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state."

With these provisions of our statutes before them, there was but one course for the assessors to pursue. The relator could only be assessed for his "taxable personal property," deducting from its value "the just debts owing by him." The obligation held by the New York bank against the relator was a just debt, as it was for money loaned to him, for which he had given his promissory note payable on demand. That such money had been used to purchase United States bonds, which were pledged to the bank as security for the payment of the note did not make it less than a just debt. It is true that if the bonds were converted into cash the proceeds would extinguish the debt, and then, to use the language of the respondent's counsel, " one hand would wash the other," but such sale has not been made, the money due to the bank has not been paid, and it is beyond all peradventure a just debt, which must, by the Revised Statutes, be deducted from the value of the relator's "taxable personal property," and by the act of 1880 (*chap.* 596), from the value of his bank shares, and for the balance only of such value was the relator taxable. The statutes, to authorize the action of the assessors, should provide for the deduction of debts from all the personal property of the individual taxed, which they do not do, but compel such deduction to be made from the "taxable personal property" of such person. The assessors have in fact made one gross sum of all the personal property — taxable and non-taxable — and from such gross sum have deducted the debts. This may be just, but it is not the law, and until that is changed there is but one course to pursue, and that is to follow the statute.

The assessors had no right arbitrarily to refuse to believe the evidence of the relator (*The People* agt. *Reddy*, 43 *Barbour*, 539), nor to decline to make the deduction, even though it was a device to avoid taxation (*Stillwell* agt. *Corwin*, 55 *Indiana*, 433). The relator had a right to purchase United States bonds, and to contract a debt for that purpose, and until our statutes are changed he had a right to insist that the debt he owed for such bonds should, when he was to be taxed for personal property, be deducted, to use the language of the statute, from his "taxable personal property," and not from all of his personal property.

The assessment upon the bank shares should be reversed, but no costs are awarded against the assessors, because it does not "appear to the court that they acted with gross negligence, in bad faith, or with malice," which must appear (*chap.* 269, *Laws of* 1880, *sec.* 6) to justify their imposition.

NOTE.—This case has been affirmed at the third department general term, September, 1881. [ED.